IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STERLING JAMICEK LEE,               \*

    Plaintiff,                    \*

       v.                     \*          Civil Action No. DKC-24-2577

WARDEN BALTIMORE COUNTY     \*
DETENTION CENTER,
CHIEF OF SECURITY BCDC,        \*
BCDC CORRECTIONAL OFFICER JOHN
DOE,                       \*
CHIEF MEDICAL OFFICER PRIME CARE,
MATTHEW MITCHELL,*Chief of Security,*  \*
*ECI*,
                         \*

    Defendants.

                  \*\*\*

**MEMORANDUM OPINION**

Plaintiff Sterling Jamicek Lee, a state inmate currently incarcerated at Dorsey Run Correctional Facility ("DRCF"), filed this civil rights action, as amended, alleging that while he was a pretrial detainee at Baltimore County Detention Center ("BCDC"), on February 23, 2022, he was attacked by other detainees. ECF Nos. 1, 9. He asserts that the Warden of BCDC, Chief of Security BCDC, and BCDC Officer Doe[1] failed to protect him from harm and failed to investigate his claims. ECF No. 9-2. Additionally, he asserts that the Chief Medical Officer of Prime Care failed to provide him access to his medical record. Further, he alleges that after he was tried, convicted, and transferred to Eastern Correctional Institution ("ECI"), Chief of Security Mitchell refused to make copies for him in April 2024. *Id*. Defendants Warden of BCDC and

---

[1]  BCDC Officer Doe has not been identified and therefore has not been served with the Complaint. Mr. Lee will be granted an opportunity to file a Second Amended Complaint identifying this officer. Should he fail to do so in the time specified in the accompanying Order, the Complaint will be dismissed without further notice and without prejudice as to Officer Doe.

Chief of Security of BCDC ("County Defendants"), and the Chief Medical Officer of Prime Care filed Motions to Dismiss in response to the Amended Complaint. ECF Nos. 24 and 27. Defendant Mitchell filed a Motion to Dismiss, or in the Alternative Motion for Summary Judgment. ECF No. 36. Mr. Lee opposes Chief Medical Officer Prime Care's motion (ECF No. 38) and seeks the appointment of counsel (ECF No. 39). There is no need for a hearing. *See* Local Rule 105.6 (D. Md. 2025).

For the reasons set forth below, the Amended Complaint will be dismissed as to Defendants Warden of BCDC, Chief of Security of BCDC, and Chief Medical Officer of Prime Care, and dismissed without prejudice for failure to exhaust administrative remedies as to Defendant Mitchell. Mr. Lee's Motion to Appoint Counsel shall be denied.

BACKGROUND

On February 23, 2022, while housed at BCDC, Mr. Lee was attacked by five individuals. ECF No. 9-2 at 7. As a result, Mr. Lee was transported to University of Maryland Shock Trauma and underwent facial reconstruction surgery. *Id.* He returned to BCDC on February 27, 2022. *Id.*

On March 1, 2022, Mr. Lee requested copies of all his medical records from the BCDC Medical Records Department. *Id.* He was advised, on March 7, 2022, that the fee for the requested records was $200.00, or he could have an attorney request the documents. *Id.* On September 20, 2022, Mr. Lee was transferred to the Maryland Division of Correction. *Id.* at 8. On November 22, 2022, he wrote to Eastern Correctional Institution ("ECI") seeking copies of his medical records regarding his surgery but when he was called to the medical unit to review the records, they did not have any record of the surgery performed while he was a pretrial detainee at BCDC. *Id.* On August 31, 2023, Mr. Lee requested the medical records directly from University of Maryland and he received them on September 6, 2023, at no charge. *Id.* at 9.

Mr. Lee also asserts that neither the BCDC Chief of Security nor the Warden of BCDC investigated the attack on him, which displayed a reckless disregard for his safety and a failure to act reasonably in response to danger. *Id.* at 8.

On December 30, 2022, Mr. Lee learned, through his ex-girlfriend, that the victim of his underlying criminal case "had with help of BCDC employee orchestrated attack incident." *Id.* at 9. Mr. Lee received pictures of screen shots of text messages between the victim and Defendant BCDC Officer Doe who knew "privilege information of plaintiff habits and movements throughout the facility, reassuring my stay won't be comfortable and knowledgeable of medical information specific to attack incident." *Id.* Mr. Lee's ex-girlfriend was directed to delete the text thread after reading it. *Id.* Mr. Lee does not provide any additional information about the messages or the officer.

On April 13, 2024, Mr. Lee wrote to Defendant Mitchell requesting to have the pictures of the text messages printed. *Id.* at 10. The following day, Defendant Mitchell advised that he could not see the text clearly and, because he could not see what they were or how they would affect Mr. Lee's court proceedings, he would not print them. *Id.* Mr. Lee advised Defendant Mitchell that if he blew up the pictures by 300% they could be read, and they would impact his court proceedings. *Id.* Defendant Mitchell responded that, "[i]t's a screenshot not a file, even if he expanded it, it's not clear enough to interpret" and advised Mr. Lee that the court could subpoena the phone associated with the messages. *Id.*

In support of his claims, Mr. Lee asserts that BCDC Chief of Security denied him due process in failing to investigate the attack. *Id.* at 10-11. Officer Doe acted with malicious and sadistic intent when he conspired to set up the hit on Mr. Lee. *Id.* at 11. Defendant Mitchell is liable due to his complicity in the conspiracy by withholding evidence. *Id.* Defendant Chief

Medical Officer Prime Care acted with deliberate indifference in failing to transfer the necessary medical records in an attempt to cover up the attack. *Id*. Defendant Warden is liable because he formulated the policy or engaged in a practice that led to a civil rights violation. *Id*.

As relief, Mr. Lee seeks compensatory damages. ECF No. 9-2 at 12.

STANDARD OF REVIEW

In reviewing the complaint in light of a motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6), the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained that a "plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

4

face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Pursuant to Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility."  *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted)

(quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

MOTION TO APPOINT COUNSEL

Mr. Lee has requested the appointment of counsel.  ECF No. 39.  "[D]istrict courts have discretion to appoint counsel in civil cases and abuse that discretion by declining to do so where the case of an indigent person presents exceptional circumstances." *Jenkins v. Woodard*, 109 F.4th 242, 247 (4th Cir. 2024) (citation and quotations omitted).  Exceptional circumstances exist if (1) plaintiff has a "colorable claim" and (2) considering the claim's objective complexity and his subjective abilities, plaintiff "lacks the capacity to present it."  *Id.*  (citation and quotations omitted).

Despite Mr. Lee's assertion that  his claim is complex, the issues presented are not unduly complicated.  Further, the record shows that Mr. Lee had ample time to respond to all pending motions but failed to respond to the motions filed by the County Defendants and Defendant Mitchell.

In his Motion for Appointment of Counsel, Mr. Lee states that he did not have access to the legal library or a tablet to prepare responses to the dispositive motions.  ECF No. 39.  Mr. Lee explained that, as of the filing of his Motion in December of 2025, he had recently been transferred to DRCF and would not be issued a tablet for 60-90 days.  *Id.*  He asserted that without the tablet he could not respond to the dispositive motions.  *Id.*  But Defendants filed their dispositive motions on September 8, 2025 (ECF No. 24), September 17, 2025 (ECF No. 27), and November 24, 2025 (ECF No. 36).  As noted, Mr. Lee did respond to the Motion to Dismiss filed by the Chief Medical Officer of Prime Care.  ECF No. 38.  He offers no explanation as to why he failed to respond to

the earlier filed dispositive motions prior to his transfer.  Over five months have now passed since

Mr. Lee's transfer to DRCF and he has filed nothing further in this case.

Upon careful consideration of the motions and previous filings by Mr. Lee, the court finds

that he has demonstrated the wherewithal either to articulate the legal and factual basis of his

claims himself or to secure meaningful assistance in doing so.  There are no exceptional

circumstances that would warrant the appointment of an attorney to represent Mr. Lee under

§ 1915(e)(1) at this time.  His motion will be denied.

ANALYSIS

Defendant Mitchell seeks dismissal of the Amended Complaint pursuant to Fed. R. Civ. P.

12(b)(6) because Mr. Lee failed to exhaust administrative remedies; his allegations fail to state a

viable constitutional claim; he is immune from suit in his official capacity; and he is entitled to

qualified immunity.  ECF No. 36-1.

The County Defendants seek dismissal of the Amended Complaint pursuant to Fed. R. Civ.

P. 12(b)(6) because Mr. Lee's allegations fail to state a claim for relief,[2] they are entitled to

qualified immunity, and they cannot be held liable under a theory of supervisory liability.  ECF

No. 27.  The Chief Medical Officer of Prime Care also seeks dismissal of the Amended Complaint

pursuant to Fed. R Civ. P. 12(b)(6) because Mr. Lee's allegations fail to state a claim and, as to any

---

[2]    In their Memorandum in support of their Motion, County Defendants argue that Mr. Lee failed to establish: the use of excessive force; an official encouraged the attack; the medical care provided was inadequate; and the attack was not properly investigated.  ECF No. 28 at 2-3. The court does not read Mr. Lee's Amended Complaint as asserting claims of excessive force, denial of medical care, or that County Defendants encouraged the attack, but rather a failure to protect Mr. Lee from harm. As such these arguments have not been considered. Further, County Defendants assert that Mr. Lee fails to state a claim under the Eighth Amendment, but as a pretrial detainee at the time of the attack his claims arise under the Fourteenth Amendment.

state negligence claim, they seek dismissal because Mr. Lee failed to comply with the Health Care Malpractice Claims Act.[3]  ECF No. 24-1.

Mr. Lee responds that he has adequately stated a claim against the Chief Medical Officer of Prime Care and that there are material facts that preclude dismissal or summary judgment, although he fails to identify those facts.  ECF No. 38.  As previously noted, Mr. Lee did not respond to the other dispositive motions.

A.      Exhaustion of Administrative Remedies

Defendant Mitchell raises an affirmative defense that Mr. Lee failed to exhaust administrative remedies prior to filing this civil action as required under the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, which provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  42 U.S.C. § 1997e(h).  The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. Appx. 253 (4th Cir. 2004).

---

[3]    The court does not consider this argument as it does not construe Mr. Lee's Amended Complaint as asserting a malpractice claim.

Administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017). Nevertheless, a claim that has not been exhausted may not be considered by this court. *See Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory. *Ross v. Blake*, 578 U.S. 632, 639 (2016). Therefore, ordinarily a court may not excuse a failure to exhaust. *Ross*, 578 U.S. at 639 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). But the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

DPSCS implements a well-defined administrative grievance process for inmates. *See generally* Md. Code Ann. (2023 Repl. Vol.), Corr. Servs. ("C.S."), §§ 10-201, *et seq.*; Md. Code

Regs. ("COMAR") 12.07.01.01B(1) (defining ARP). An inmate first must file an ARP with the Warden where he is confined, and if the ARP is denied, the inmate must next appeal the denial to the Commissioner of Correction. If the Commissioner of Correction finds against the inmate, the inmate next must file a grievance with the IIGO. C.S. § 10-206(a); C.S. § 10-210; COMAR 12.07.01.05B. If the grievance is determined to be "wholly lacking in merit on its face," the IIGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see* COMAR 12.07.01.07B. An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii).

Here there is no record that Mr. Lee filed any ARP concerning Defendant Mitchell's refusal to print the screenshot from Mr. Lee's Tablet. ECF No. 36-2, ¶ 5, Decl. Brittingham. Nor is there any record that Mr. Lee filed an appeal to the Commissioner regarding his claims asserted against Defendant Mitchell. ECF No. 36-3, ¶ 5, Decl. Bell. Finally, the IIGO has no record that Mr. Lee filed a grievance with it regarding the allegations asserted against Defendant Mitchell. ECF No. 36-3, ¶ 4, Decl. Taylor. Mr. Lee has failed to rebut this evidence or provide any explanation for his failure to pursue available remedies. Because Mr. Lee failed to begin, much less complete, the grievance process as to his claims against Defendant Mitchell, those claims must be dismissed without prejudice for failure to exhaust administrative remedies.

B.      *Monell* Claim

Mr. Lee has sued the Warden of BCDC claiming that he has created an unconstitutional policy or practice that violated Mr. Lee's constitutional rights, however, he fails to identify the policy or practice at issue. ECF No. 9-2.

An official capacity claim, such as the one Mr. Lee attempts to assert, is treated as a suit against the government entity, *i.e.*, Baltimore County. *See Kentucky v. Graham*, 473 U.S. 159,

166 (1985). Local governmental entities may be liable under § 1983 based on the unconstitutional actions of individual defendants where those defendants were executing an official policy or custom of the local government that violated the plaintiff's rights. *Monell,* 436 U.S.658, 690-91. The *Monell* Court explained that, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury the government as an entity is responsible under § 1983." *Id.* at 694.

In *Connick v. Thompson*, 563 U.S. 51, 60 (2011), the Supreme Court explained (emphasis in *Connick*) (citations cleaned up):

> A municipality or other local government may be liable under [§ 1983] if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. at  692 (1978). But, under § 1983, local governments are responsible only for "their *own* illegal acts." *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) (citing *Monell*, 436 U.S. at 665-683). They are not vicariously liable under § 1983 for their employees' actions. *See id.* at 691; *Canton*, 489 U.S. 378, 392; *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997) (collecting cases).

Thus, a viable § 1983 *Monell* claim consists of two components: (1) the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights. *See, e.g.*, *Bd. of Comm'rs of Bryan Cty., v. Brown*, 520 U.S. 397, 403 (1997); *Kirby v. City of Elizabeth City*, 388 F.3d 440, 451 (4th Cir. 2004), *cert. denied*, 547 U.S. 1187 (2006); *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).

A plaintiff may demonstrate the existence of an official policy in three ways: (1) an express policy; (2) certain affirmative decisions of policymaking officials; and (3) a widespread practice that is so engrained it constitutes a custom, including omissions made by policymaking officials that "manifest deliberate indifference to the rights of citizens." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999).

11

Mr. Lee fails to explain what policy, practice, or custom, resulted in his being attacked by other detainees or resulted in the alleged failure to investigate the assault, or prohibited him from accessing his outside medical records. Thus, Mr. Lee's claim against BCDC Warden fails because he has not established there is a policy, practice, or custom that was enforced resulting in a deprivation of his constitutional right.

C.    Supervisory Liability

Under Section 1983, a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *Wahi v. Charleston Area Med. Ctr.*, 562 F.3d 599, 615 (4th Cir. 2009).

The defendant's own action—or failure to act—is required for liability under § 1983. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). There is no *respondeat superior* liability under § 1983. *Love-Lane*, 355 F.3d at 782. An official may be found liable only if the plaintiff shows the official "acted personally in the deprivation of the plaintiff['s] rights." *Vinnedge*, 550 F.2d at 928 (quoting *Bennett v. Gravelle*, 323 F. Supp. 203, 214 (D. Md.), *aff'd*, 451 F.2d 1011 (4th Cir. 1971)). Other than asserting that the BCDC Warden is responsible for unidentified policies, and that the BCDC Chief of Security failed to investigate the attack on him, Mr. Lee fails to provide specific factual allegations asserting that the BCDC Warden or the BCDC Chief of Security are responsible for any of his injuries. To allege

that an officer violated a prisoner's constitutional rights, "the complaint must make defendant-specific allegations.  The allegations must be particular enough to allow one to infer what each defendant did and knew."  *Rice v. Adams*, 172 F.4th 428, 432 (4th Cir. 2026), citing *Iqbal*, 556 U.S. at 678–79.  Similarly, Mr. Lee has failed to allege that the Chief Medical Officer of Prime Care was personally responsible for any of the conduct alleged regarding his access to his medical records.  Mr. Lee  cannot hold any of these parties responsible under a theory of either supervisory liability or respondeat superior and for these reasons they are each entitled to dismissal.

D.      Fourteenth Amendment Claim

Mr. Lee was a pre-trial detainee at the time of the attack at BCDC.  To the extent that he claims that the County Defendants failed to protect him from a risk of harm prior to the attack and their failure to investigate his attack constituted a further failure to protect him from a known risk of harm, his claims must be dismissed.

To state a claim for failure to protect from attack by another detainee, a pretrial detainee first must allege an objectively "serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk of either injury.  *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014).  This inquiry requires this court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk."  *Helling v. McKinney*, 509 U.S. 25, 36 (1993).  Then, as for any Fourteenth Amendment claim, the plaintiff must allege that the injury or risk of injury resulted from the defendant's action or inaction, and that "the 'governmental action' they challenge" is not 'rationally related to a legitimate nonpunitive governmental purpose' or is 'excessive in relation to that purpose.'"  *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015) (quoting *Bell v. Wolfish*, 441 U.S. 520,

561 (1979)) (internal quotation marks omitted). *Id.* at 611. A pretrial detainee can state a Fourteenth Amendment claim "on [a] purely objective basis" because "*Kingsley*'s objective test extends to all pretrial detainee claims under the Fourteenth Amendment … for deliberate indifference to an excessive risk of harm." *Id.* at 610–11.

Here, Mr. Lee fails to allege that either of the County Defendants knew of any risk of harm to him prior to the attack. Mr. Lee also fails to identify any action that the County Defendants took or failed to take related to the attack.

As to Mr. Lee's claim that the failure to investigate the attack after it occurred created a risk of harm, he does not provide any factual support for such a claim. Aside from a conclusory statement, Mr. Lee fails to provide specific factual allegations indicating that the County Defendants failed to investigate the attack upon him, and more importantly, he fails to explain what risk of harm was created by the alleged failure. To the extent that the failure somehow implicates his inability to file criminal charges against his assailants, Mr. Lee does not have a constitutional right to pursue criminal charges, and the loss of that opportunity is not a violation of his federal constitutional rights. "[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973), *see also Banks v. Buchanan*, 336 Fed. App'x 122, 123 (3d Cir. 2009); *Sargeant v. Dixon*, 130 F.3d 1067, 1069 (D.C. Cir. 1997); *Sibley v. Obama*, 866 F. Supp. 2d 17, 22 (D.D.C. 2012) *aff'd*, Civ. No. 12-5198, 2012 WL 6603088 (D.C. Cir. Dec. 6, 2012); *Speight v. Meehan*, Civ. No. 08-3235, 2008 WL 5188784, at *3 (E.D. Pa. Dec. 9, 2008).

This claim does not pass the "plausibility standard" required by Rule 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient facts to state a claim that is 'plausible on its face.'" *Short,* 87 F.4th at 603 (quoting *Nemet Chevrolet, Ltd. V.*

14

*Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.  This aspect of Mr. Lee's claim simply is not plausible.  As such, and for this additional reason, the Complaint must be dismissed as to the County Defendants.[4]

## CONCLUSION

The Amended Complaint must be dismissed as to the County Defendants and as to the Chief Medical Officer of Prime Care.  The Amended Complaint will be dismissed without prejudice as to Defendant Mitchell for failure to exhaust administrative remedies.  Mr. Lee will be granted an opportunity to file a Second Amended Complaint against Defendant Doe.

A separate Order follows.


June 3, 2026                                                    /s/
                                                    DEBORAH K. CHASANOW
                                                    United States District Judge

---

[4]    Because the Amended Complaint cannot proceed, the court need not address Defendants' additional arguments.